[No. 30027-0-I.   Division One.   June 14, 1993.]

*In the Matter of the Detention of* W.

*Norm Maleng, Prosecuting Attorney,* and *Gerald A. Smith, Deputy,* for appellant.

*Christine Jackson* of *The Defender Association,* for respondent.

FORREST, J. — The State, representing Harborview Medical Center (HMC), appeals the order affirming the commissioner's order committing W. for involuntary intensive treatment for a period not to exceed 90 days at HMC, although it is not a facility certified for 90-day treatment. Holding that the public interest justifies addressing the issue, although moot, and that RCW 71.05.320(1) requires the court to commit to Western State Hospital (WSH) if less restrictive treatment is not appropriate, we reverse the trial court.

W. is a quadriplegic and suffers severe mental disorders.[1] On November 8, 1991, W. was detained at HMC as an involuntary psychiatric patient for 14 days. On November 18, 1991, HMC's professional designee filed a petition for 90-day involuntary treatment pursuant to RCW 71.05.290.[2] At the December 10, 1991, hearing on the petition, W. presented testimony that when he had previously been detained at WSH, he had been discharged to Good Samaritan Hospital because he had developed bedsores. A mental health commissioner found clear, cogent and convincing evidence that W. was gravely disabled and that the best interests of W. and others would not be served by a less restrictive treatment at that time, but that such treatment would serve these best interests if appropriate nursing home care could be arranged to meet W.'s needs. By order dated December 10, 1991, the commissioner ordered W. detained and remanded into the

---

[1] W.'s quadriplegia resulted from a suicide attempt.

[2] That statute provides in part:

"At any time during a person's fourteen day intensive treatment period, the professional person in charge of a treatment facility or his professional designee or the designated county mental health professional may petition the superior court for an order requiring such person to undergo an additional period of treatment. Such petition must be based on one or more of the grounds set forth in RCW 71.05.280." RCW 71.05.290(1).

custody of HMC for a period of intensive treatment not to exceed 90 days.

The State filed a motion to revise the commissioner's order arguing the commissioner committed an error of law by committing W. to HMC, a facility the commissioner knew was not a facility certified for 90-day treatment by the Department of Social and Health Services (DSHS). By order entered December 24, 1991, the trial court affirmed the commissioner's order. The court reached its decision after reasoning that:

> there is no dispute of fact regarding the level of general nursing care required by [W.] and the level of psychiatric care required to address his undisputed grave disability; and . . . there is currently no less restrictive care presently available to [W.] and the undisputed evidence demonstrated that his care requirements presently existing were shown to be available only at [HMC], although the possibility of less restrictive care may be developed during the 90 days of detention ordered by the Court[.]

W. was detained at HMC until March 25, 1992 (105 days), on which date the court ordered W. committed to WSH for a period of 180 days of intensive treatment. The State appeals.

1. Should the appeal be heard even though the issue presented is moot?

The State concedes the case is moot since the detention which is the subject of the appeal has ended, but contends the appeal should nevertheless be heard because it raises issues of continuing and substantial public interest. We agree.

■■ It is well settled that where a case is moot, a court may nonetheless decide it "if it involves 'matters of continuing and substantial public interest'." *In re Cross*, 99 Wn.2d 373, 377, 662 P.2d 828 (1983) (quoting *Sorenson v. Bellingham*, 80 Wn.2d 547, 558, 496 P.2d 512 (1972)). The Supreme Court has decided several technically moot cases involving involuntary commitments under the public interest exception to the mootness doctrine,[3] and has stated that "the need to clarify the statutory scheme governing civil commitment

---

[3] *See, e.g., In re Swanson*, 115 Wn.2d 21, 804 P.2d 1 (1990); *In re LaBelle*, 107 Wn.2d 196, 728 P.2d 138 (1986); *Dunner v. McLaughlin*, 100 Wn.2d 832, 676 P.2d 444 (1984); *In re Cross*, 99 Wn.2d 373, 662 P.2d 828 (1983).

is a matter of continuing and substantial public interest." *Dunner v. McLaughlin*, 100 Wn.2d 832, 838, 676 P.2d 444 (1984).

The criteria to be considered in determining whether a sufficient public interest is involved are: (1) the public or private nature of the question presented; (2) the desirability of an authoritative determination which will provide future guidance to public officers; and (3) the likelihood that the question will recur.

*In re Cross*, 99 Wn.2d at 377.

■■ The issue in this case is whether the mental health commissioner and the court had the authority to commit W. to HMC for 90 days of intensive treatment. In *In re Cross, supra*, the court held that the question of a judicial officer's authority is public in nature, thus satisfying the first criterion above.[4] Second, it would be desirable to give mental health commissioners, courts, and DSHS an authoritative determination regarding the issue presented. Given W.'s quadriplegia and special medical needs, the fact pattern presented here is not likely to recur frequently, if at all. However, it is likely that issues will arise involving the involuntary commitment of persons claiming that WSH cannot address their medical and/or psychological needs and that they would be better treated at HMC or some other general hospital. In light of the Supreme Court's statements that clarification of the statutory involuntary civil commitment scheme is a matter of continuing and substantial public interest, the State's appeal should be addressed despite its mootness.

2. Did the trial court err in affirming the commissioner's order which remanded W. to HMC for 90 days of intensive treatment?

The State contends remanding W. to HMC was error because RCW 71.05.320 by its explicit language[5] does not per-

---

[4]*In re Cross*, 99 Wn.2d at 377 (issue was whether the mental health commissioner had the authority, absent a finding of noncompliance with conditions of less restrictive treatment, to order a person returned to inpatient status).

[5]In a hearing on a petition for 90-day treatment,

"If the court or jury finds that grounds set forth in RCW 71.05.280 [for confinement for additional treatment] have been proven and that the best inter-

mit a person committed for 90 days of intensive treatment to be remanded to a facility, such as HMC, which has not been certified by DSHS for 90-day treatment. It is further argued that the Legislature intended local facilities to be used for short-term evaluation and treatment and not 90-day intensive treatment.

W. does not dispute that at the time the court entered its order, HMC was not certified for 90-day treatment. Nor does W. dispute that the statutory language does not authorize the court's action, but contends the court had inherent authority to set appropriate limits and conditions on the 90-day treatment in order to protect W.'s constitutional right to adequate medical treatment. W. also contends that the trial court's finding that his care requirements were only available at HMC was supported by the evidence and that W. was therefore properly remanded to HMC's custody.

▉▉ The dispositive language is "the court shall remand" to DSHS or a certified facility. RCW 71.05.320(1). "Shall" is mandatory except under very unusual circumstances.[6] This interpretation is reinforced because there is no standard in the statute to guide an exercise of discretion. Any such authority to disregard the statutory language is inconsistent with the entire statutory scheme and renders the statute incapable of reasonable and consistent enforcement. We hold that under this statutory language, remand to either DSHS or a facility certified by DSHS for 90-day treatment is mandatory if the court finds additional intensive treatment is warranted.

---

ests of the person or others will not be served by a less restrictive treatment which is an alternative to detention, the court *shall* remand him or her to the custody of the department of social and health services or to a facility certified for ninety day treatment by the department of social and health services for a further period of intensive treatment not to exceed ninety days from the date of the judgment". (Italics ours.) RCW 71.05.320(1).

[6]*State v. Smith*, 117 Wn.2d 263, 271, 814 P.2d 652 (1991); *Department of Ecology v. State Fin. Comm.*, 116 Wn.2d 246, 252, 804 P.2d 1241 (1991).

■ It was likewise error for the court to determine that WSH could not provide W. with adequate treatment.[7] Under the statutes, DSHS, not a judge or a mental health commissioner, is given the responsibility of making this determination, at least in the first instance. A person who is involuntarily committed pursuant to RCW 71.05 has "the right to adequate care and individualized treatment." RCW 71.05-.360(2). DSHS is explicitly given the responsibility for ensuring that this right, and the constitutional rights, of that person are not violated:

> [DSHS] shall have the responsibility to determine whether all rights of individuals recognized and guaranteed by the provisions of this chapter and the Constitutions of the state of Washington and the United States are in fact protected and effectively secured. To this end, the department shall assign appropriate staff who shall from time to time as may be necessary have authority to examine records, inspect facilities, attend proceedings, and *do whatever is necessary* to monitor, evaluate, and assure adherence to such rights. Such persons shall also recommend such additional safeguards or procedures as may be appropriate to secure individual rights set forth in this chapter and as guaranteed by the state and federal Constitutions.

(Italics ours.) RCW 71.05.520.

If DSHS determined that the DSHS certified facility was unable to provide W. with adequate medical care, DSHS would have the authority and duty under RCW 71.05.520 to transfer W. to a facility which would be able to provide the care to which W. is entitled. Only an actual failure to discharge this responsibility would generate grounds for an appeal to the courts; not merely an anticipated failure as urged by W.

The Superior Court was without authority to order 90-day intensive treatment for W. at HMC when that facility was not certified by DSHS for 90-day treatment.

---

[7] The principal basis for this claim is that on a prior commitment W. developed bedsores and had to be transferred to a general hospital. Even assuming this was due to inadequate treatment, one such incident does not prove that WSH is incapable of providing adequate physical care.

Reversed.

GROSSE and KENNEDY, JJ., concur.

Review denied at 122 Wn.2d 1026 (1993).